**UNITED STATES of America,**
**Plaintiff**

v.

**T. Y. FONG, individually and trading as Asia Development Corporation, and as Hong Kong Shipping Corporation, Limited, Defendant.**

**No. 36089.**

United States District Court
N. D. California, S. D.

Order Reserving Ruling on Motion to Dismiss Dec. 3, 1957.

Order for Judgment Dec. 29, 1958.

On Motions for New Trial, Vacation of Default and Amendment of Judgment June 3, 1959.

Lloyd H. Burke, U. S. Atty., San Francisco, Cal., James B. Schnake, Asst. U. S. Atty., San Francisco, Cal., Mrs. Katherine H. Johnson, Attorney, Department of Justice, Washington, D. C., for plaintiff.

Robert J. Drewes, Brobeck, Phleger & Harrison, San Francisco, Cal., Smith W. Brookhart, Benjamin H. Dorsey, Brookhart, Becker & Dorsey, Washington, D. C., for defendant.

### Order Reserving Ruling on Motion to Dismiss

GOODMAN, District Judge.

Defendant has moved to dismiss count one of the amended complaint for failure to state a claim upon which relief can be granted. Count one charges defendant with the violation of the False Claims Act, Revised Statutes §§ 3490, 5438, 31 U.S.C.A. § 231, and asks statutory forfeitures and double damages.

The False Claims Act provides that "any person * * * who shall make or cause to be made, or present or cause to be presented, for payment or approval, * * * any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry * * * shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which

the United States may have sustained by reason of the doing or committing such act, together with the costs of suit." 31 U.S.C.A. § 231.

The facts alleged to constitute a violation of this statute may be briefly summarized. In 1946, the United States Maritime Commission declared surplus fifteen government-owned vessels located in the Subic Bay Reserve Fleet, Philippine Islands. Pursuant to Section 508 of the Merchant Marine Act of 1936, 49 Stat. 1985, 46 U.S.C.A. § 1101 et seq., these surplus vessels were advertised by the Commission for sale for the purpose of scrapping. Defendant submitted a bid of $271,000 for these vessels which was accepted by the Commission on February 2, 1948. In the contract of sale, defendant agreed to scrap the hulls of five of the vessels by March 3, 1950 and the hulls of each of the other ten vessels at one month intervals thereafter. As evidence that such scrapping had been done, he agreed to furnish the Commission a certificate of completion by a reputable marine surveyor.

Section IX(F)3 of the contract provided that the scrapping to be performed by defendant was the primary consideration for the sale of the vessels to him and that time was of the essence in the performance of the scrapping. For failure to scrap the vessels within the specified time, defendant agreed to pay as liquidated damages the sum of $100 per day for each vessel not scrapped, for a maximum of 180 days following the date specified for completion of scrapping. For continued failure to scrap the vessels beyond the 180 day period, defendant agreed to be deemed in total default and to pay an additional sum of $25,000 for each unscrapped vessel as liquidated damages.

Section IX(F)4 of the contract provided that the Commission might terminate the contract as to further performance in the event defendant should fail to scrap any of the hulls within 180 days after the time specified, or if he should operate any of the vessels or permit their operation. Defendant agreed that upon such termination by the Commission he would surrender possession of any vessels or parts thereof not scrapped and deliver to the Commission a properly executed bill of sale with full warranty of title and freedom from all liens. He further agreed that such termination would not release him from the payment of liquidated damages for each day's delay in scrapping the vessels or for total default.

Section H of the contract specified that defendant should not sell or assign any of his rights or obligations under the contract without the written consent of the Commission.

On May 2, 1951, several months after the agreed date for completion of the scrapping of the last of the fifteen vessels, defendant wrote the Maritime Commission requesting an extension of time for scrapping of three of the vessels on which he claimed scrapping had not yet commenced. In respect to the other twelve vessels, he stated that the scrapping of three was completed, that the scrapping of seven was progressing and that two had apparently been lost at sea. He noted that none of the vessels had left his ownership.

Thereafter, defendant submitted to the Commission scrapping certificates for the seven vessels which in his letter of May 2, he had indicated were in the process of being scrapped. These certificates attested that the scrapping of four of these vessels was completed by March 16, 1951 and that the scrapping of the other three was completed by May 16, 1951.

Plaintiff alleges that by May 2, 1951, when defendant stated that none of the fifteen vessels had left his ownership, he had in fact sold ten of the vessels unscrapped. Although apparently these vessels were ultimately scrapped by defendant's vendees, plaintiff claims that the seven vessels referred to in the scrapping certificates were not scrapped by the certified dates.

Plaintiff contends that the allegedly false statements in defendant's

letter of May 2, 1951 and in the scrapping certificates were made for the purpose of obtaining approval of a claim against the United States in violation of the False Claims Act. The claim asserted by defendant against the United States, plaintiff argues, was defendant's implied claim of right to retain title to the vessels in opposition to the contractual right of the United States to require a reconveyance of the vessels for breach of the conditions of the sales contract. Plaintiff urges that defendant's allegedly false statements were designed to conceal breaches of conditions entitling the United States to a reconveyance of the vessels and thus in effect were made to secure approval of a claim against the United States.

The pleadings indicate that what plaintiff contends to be a claim against the United States is not a claim in the ordinary sense. Whether it is in *fact* a claim against the United States within the meaning of the False Claims Act is most doubtful, *judged from the pleadings alone*.

An appraisal of plaintiff's claim in turn requires a careful appraisal of the rights and duties of the parties under the sales contract and of their dealings with each other after entering into the contract. The latter necessitates factual inquiries. Such an appraisal cannot and should not be made upon the pleadings alone. For example, it is not clear from the face of the contract that the alleged sale of the vessels was such a breach as entitled plaintiff to demand a reconveyance. Nor, is it clear whether plaintiff retained such an interest in the vessels as would have enabled it to regain title if defendant's vendees were bona fide purchasers. There is a questionable issue whether the allegedly false scrapping certificates could be deemed material misrepresentations inasmuch as the certified

completion dates themselves indicated a breach of contract entitling plaintiff to terminate the contract as to further performance.

Aside from the first count charging a violation of the False Claims Act, plaintiff's amended complaint contains three other counts. The trial of these counts will require the presentation of most of the evidence material to the first count.

Under all of these circumstances, the Court should not undertake the difficult task of determining whether the first count of the amended complaint states a claim under the False Claims Act in the pleading stage of this litigation.* Ruling will be reserved on defendant's motion to dismiss until the trial. Rule 12(d), F.R.Civ.P., 28 U.S.C.A.

### Order for Judgment

GOODMAN, Chief Judge.

This action arises out of defendant's failure to fully perform a contract with the United States whereby defendant agreed to purchase, for scrapping, fifteen surplus government vessels.[1] The amended complaint in four counts sets forth separate claims for relief. Count one charges a violation of the False Claims Act, Revised Statutes §§ 3490, 5438, 31 U.S.C.A. § 231, and seeks statutory forfeitures and double damages. Count two charges a violation of the Surplus Property Act of 1944, 58 Stat. 765, as reenacted in the Federal Property and Administrative Service Act of 1949, 63 Stat. 392, 40 U.S.C.A. § 471 et seq., and seeks civil penalties and double damages. Count three is a claim for damages for conversion of personal property. Count four seeks damages for breach of contract.

On March 14, 1958, the Court entered an order, pursuant to Rule 37(d) of the Federal Rules of Civil Procedure, strik-

---

* Montgomery Ward & Co. v. Schumacher, D.C.1944, 3 F.R.D. 368.

1. The contract with the United States was executed in the name of the Asia Development Corporation. But, the allegations of the complaint, which are accepted as true as a result of the entry of a default against defendant, are that the Asia Development Corporation was under the complete control of defendant Fong and was merely a conduit through which he carried on his individual business.

ing defendant's answer and entering a default against him, upon a finding that he had wilfully failed to appear for the taking of his deposition.[2] The order further provided that a trial should be had on the issue of damages only at which time both parties might offer evidence on such issue. Trial was had on the issue of damages on July 7 and 8, 1958 and the cause has been argued and submitted on written memoranda.

■ The Government has conceded that it may not have a multiple recovery of damages under more than one count of the complaint, and seeks only an alternative judgment under each of the four counts. In the opinion of the Court, there is grave doubt that counts one, two, and three state a claim on which relief can be granted.[3] Under the circumstances, it is proper that damages be awarded only upon plaintiff's claim for breach of contract.

The contract between plaintiff and defendant required that defendant scrap the hull of five of the surplus vessels purchased by him by March 3, 1950, and the hulls of each of the other ten vessels at one month intervals thereafter.

Section IX(F)3 of the contract provided that the scrapping to be performed by defendant was the primary considera-

tion for the sale of the vessels to him and that time was of the essence in the performance of the scrapping. For failure to scrap the vessels within the specified time, defendant agreed to pay as liquidated damages the sum of $100 per day for each vessel not scrapped, for a maximum of 180 days following the date specified for completion of scrapping. For continued failure to scrap the vessels beyond the 180-day period, defendant agreed to be deemed in total default and to pay an additional sum of $25,000 for each unscrapped vessel as liquidated damages.

Section IX(F)4 of the contract provided that the Maritime Commission might terminate the contract as to further performance in the event defendant should fail to scrap any of the hulls within 180 days after the time specified, or if he should operate any of the vessels or permit their operation. Defendant agreed that upon such termination by the Commission he would surrender possession of any vessels or parts thereof not scrapped and deliver to the Commission a properly executed bill of sale with full warranty of title and freedom from all liens. He further agreed that such termination would not release him from the payment of liquidated damages for each

2. In July, 1957, defendant Fong appeared pursuant to proper notice for the taking of his deposition and was examined. The examination was recessed on July 23, 1957, by agreement of the parties to be resumed on ten days' notice. Defendant's attorneys were served with proper notice on January 11, 1958, of the resumption of defendant's deposition on February 17, 1958, but defendant failed to appear. Upon the representation by defendant's attorneys that they had been unable to contact defendant, the Court extended the time for his deposition from February 17 to February 27, 1958. Defendant failed to appear on February 27, and his attorneys advised the Court that he had cabled them from Santiago, Chile, that he wished to complete his deposition upon written interrogatories. No satisfactory excuse was offered by defendant for his failure to appear. A motion by defendant's counsel for an order that his further deposition be taken only on writ-

ten interrogatories was denied. Thereafter, on March 13, 1958, plaintiff moved the Court for the order striking defendant's answer and entering a default against him. At the hearing of this motion, no adequate reason was offered for defendant's continued failure to appear for his deposition, and plaintiff's motion was granted.

3. During the pretrial state of this litigation, defendant moved to dismiss the first count of the complaint on the ground that it did not state a claim on which relief could be granted. On December 23, 1957, the Court entered an order reserving ruling on the motion until the trial. In the order the Court noted that the claim asserted in the first count was, in its opinion, a doubtful one which could best be appraised upon a complete factual record. The posture that this cause has now assumed upon the entry of defendant's default has made it unnecessary to rule on the motion to dismiss.

day's delay in scrapping the vessels or for total default.

Section IX(H) of the contract specified that defendant should not sell or assign any of his rights or obligations under the contract without the written consent of the Commission.

Defendant took delivery of the fifteen vessels at Subic Bay, Philippine Islands, on March 3, 1948. Twelve of the vessels were thereafter towed to Shanghai, China, for scrapping. Before the vessels could be scrapped, Chinese Communist forces advanced on Shanghai, and defendant removed ten of the twelve vessels to the British Crown Colony of Hong Kong. Two of the twelve vessels had been grounded at Shanghai and were left there. On November 23, 1949, defendant sold the Antelope, one of the ten vessels then at Hong Kong, unscrapped for $50,000. The Antelope was returned by the vendee to Shanghai. On August 25, 1950, defendant sold two more of the vessels at Hong Kong, the Henry L. Abbott and the Juan de Fuca, unscrapped for $80,000 each. While these two vessels were being towed back to Shanghai by the vendee, they were intercepted by a Chinese Communist gunboat. The complaint alleges that the Henry L. Abbott was ultimately scrapped on March 13, 1952, but the fate of the Juan de Fuca is not revealed by the record. Four of the seven vessels remaining in Hong Kong were sold unscrapped by defendant between November 15, 1950 and February 28, 1951, and, the complaint alleges, were ultimately scrapped in Hong Kong, during 1951. The remaining three vessels at Hong Kong were sold unscrapped by defendant in January 1951 and were towed by their vendees to Canton, China. The evidence in the record does not establish whether or not these three vessels have ever been scrapped.

■■ The complaint alleges and the evidence shows that the twelve vessels whose disposition has just been related were not scrapped by defendant or for his account within the time required by the contract. Moreover there is no evidence that these vessels were scrapped by anyone within the time specified. Consequently it is clear that plaintiff is entitled to the full liquidated damages provided by the contract for the delay in scrapping these twelve vessels. These damages total $516,000.[4]

■ The three vessels which had been left at Subic Bay, Philippine Islands, after the other twelve had been removed, were towed to Japan by defendant in 1953. They were sold there by defendant unscrapped but with the understanding that they were sold only for scrapping. They were, in fact, scrapped by defendant's vendees by the end of 1953. The time for scrapping these vessels had meanwhile been extended by the Maritime Commission to December 31, 1953. The complaint alleges that defendant failed to scrap these three vessels or to contract for their scrapping for his account within the time specified by the contract as extended. But the complaint also alleges and the evidence shows that these vessels had been scrapped by defendant's vendee within the time specified. Plaintiff urges that defendant's sale of the three vessels unscrapped constituted a refusal and failure on his part to scrap the vessels and thereby made him liable for the liquidated damages provided by the contract for failure to scrap within the time specified. However, in the opinion of the Court, the liquidated damage provision in the contract was intended only to protect the government against damages it might suffer if the vessels were not timely scrapped. While defendant breached the contract by parting with title to the vessels prior to the time they were actually scrapped, the vessels were nevertheless scrapped within the extended time limit fixed by the Government, and hence this was not a breach which would support an award of liquidated damages.

---

4. The liquidated damages assessable in respect to each vessel are $43,000—$100 per day for each day's delay in scrapping up to 180 days, and an additional flat amount of $25,000 for each vessel for the delay extending beyond 180 days.

In addition to liquidated damages for delay in scrapping, plaintiff also seeks damages for defendant's breach of contract in selling thirteen of the vessels unscrapped. Section IX(H) of the contract prohibited defendant from selling or assigning any of his rights or obligations under the contract without the consent of the Maritime Commission. The liquidated damages provision of the contract is inapplicable to a breach of this section.

Plaintiff contends, however, that it suffered actual damages as a result of defendant's sale of the thirteen vessels prior to scrapping. Section IX(F)4 of the contract entitled plaintiff to terminate the contract by written notice to defendant and to repossess any unscrapped vessels in the event that defendant failed to scrap any vessel within 180 days following the date specified for completion of the scrapping of such vessel. Plaintiff claims that when defendant sold the first vessel unscrapped on November 23, 1949, he committed an anticipatory breach of his agreement to scrap such vessel within the time specified, and that plaintiff was thereupon entitled to terminate the contract and repossess all unscrapped vessels. Consequently, plaintiff argues, each sale by defendant of an unscrapped vessel deprived plaintiff of its right to repossess such vessel, and thereby damaged plaintiff to the extent of the value of the vessel.

Plaintiff concedes that it has never terminated the contract by written notice to defendant or demanded possession of any of the vessels. It claims that defendant concealed the fact that he had sold any of the vessels, and that after plaintiff discovered this, it would have been an idle act to formally terminate the contract since it could not then recover possession of vessels which had been sold.

It appears, however, that, whether or not the sale of the first vessel unscrapped on November 23, 1949, was an anticipatory breach entitling plaintiff to terminate the contract, by September 3, 1950, the actual delay in the scrapping of the vessels entitled plaintiff under the provisions of Section IX(F)4 to terminate the contract if it so desired. At this time only three vessels had been sold by defendant unscrapped. Plaintiff took no action to terminate the contract. The terms of the contract, itself, make it very clear that its primary purpose was to secure the scrapping of the surplus vessels. The actions of the Maritime Commission throughout the administration of the contract demonstrate that plaintiff did not wish to repossess any of the vessels and be burdened with their disposal but was solely concerned with having them scrapped. The complaint alleges and it was not disputed at the trial that eight of the thirteen vessels sold by defendant unscrapped were eventually scrapped. As to these eight vessels, plaintiff has failed to show any actual damages as a result of their sale by defendant unscrapped.

The complaint does not state and there is no competent evidence in the record that five of the thirteen vessels sold by plaintiff unscrapped have ever been scrapped. Plaintiff would be entitled to terminate the contract and repossess these vessels. Since their sale by defendant has made this impossible, plaintiff has thereby been damaged to the extent of the value of these vessels. Their value as established by the sales price admittedly received by defendant totals $511,000.[5] Consequently, plaintiff is entitled to damages in that amount for defendant's breach of contract in selling these vessels unscrapped.

That such a large judgment is by default is the regrettable consequence of defendant Fong's inexplicable failure to appear and implement his defense. It may be that a meritorious defense to all or part of plaintiff's claim for breach of contract could have been presented. But

5. The respective prices received by defendant for each of the five vessels were: the Antelope, $50,000; the Juan de Fuca, $80,000; the Belusan, $148,000; the Abarenda, $125,000; the Kenwood, $108,000—a total of $511,000.

the importance in the administration of justice of effectuating the discovery process of the Court made the entry of the default necessary.

Judgment may enter in favor of plaintiff and against defendant T. Y. Fong, individually and trading as Asia Development Corporation and as Hong Kong Shipping Corporation, for $516,000 liquidated damages and $511,000 actual damages, a total of $1,027,000, upon findings to be presented pursuant to the rules.

## On Motions for New Trial, Vacation of Default and Amendment of Judgment

This action arose out of defendant's failure to fully perform a contract with the United States whereby defendant agreed to purchase, for scrapping, fifteen surplus government vessels. The amended complaint set forth separate claims for relief in four counts. Count one charged a violation of the False Claims Act, Revised Statutes §§ 3490, 5438, 31 U.S.C.A. § 231, and sought damages in the amount of $1,587,500. Count two charged a violation of the Surplus Property Act of 1944, 58 Stat. 765, as re-enacted in the Federal Property and Administrative Service Act of 1949, 63 Stat. 392, 40 U.S.C.A. § 471 et seq., and sought civil penalties and double damages in an unspecified amount. Count three asserted a claim for damages of not less than $1,587,500 for conversion of personal property. Count four charged a breach of contract and sought liquidated damages in the amount of $645,000.

On March 14, 1958, the Court entered an order, pursuant to Rule 37(d) of the Federal Rules of Civil Procedure, striking defendant's answer and entering a default against him, upon a finding that he had wilfully failed to appear for the taking of his deposition. The order further provided that a trial should be had on the issue of damages only, at which time both parties might offer evidence on such issue. Trial was had on the issue of damages on July 7, and 8,

1958, and the cause was argued and submitted on written briefs.

Plaintiff having conceded that it was not entitled to judgment on more than one of the four counts, the Court on February 11, 1959, entered a judgment against defendant on the fourth count only in the amount of $1,027,000 for breach of contract. This award consisted of $516,000 liquidated damages for breach of certain provisions of the contract and $511,000 actual damages for breach of other provisions of the contract.

Defendant has now moved for a new trial and for vacation of the default, or in the alternative, for amendment of the judgment.

No circumstances are advanced by defendant which in any way indicate that the order of default was not justified at the time it was entered. Although defendant now offers to prepay the expenses of plaintiff's attorney to travel to Sao Paulo, Brazil, to complete his deposition and also represents that he is willing to appear in San Francisco to resume his deposition when his health permits, he has made no showing whatsoever of a meritorious defense which might warrant the exercise of the Court's discretion to set aside the default.

Two amendments to the judgment are sought by defendant as an alternative to the vacation of the default. One is the striking of the award of liquidated damages and the other is the striking of the award of actual damages. If both amendments were made, the judgment would in effect be vacated.

Defendant contends that liquidated damages should not have been awarded because plaintiff abandoned its demand for such damages. At the trial on the issue of damages plaintiff for the first time claimed actual damages for breach of contract, and perhaps unduly emphasized this claim to such an extent that the claim for liquidated damages was relegated to the background. But an examination of the trial record and the arguments and briefs of counsel as a whole

shows beyond question that the claim for liquidated damages was not abandoned.

Defendant challenges the award of actual damages for breach of contract as being in conflict with Rule 54(c), Federal Rules of Civil Procedure. Rule 54 (c) states that: "A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

■ Plaintiff's amended complaint, in the fourth count, prayed only for liquidated damages for breach of the provisions of the contract prescribing a time limit for completion of the scrapping of the vessels purchased by defendant. Not until the trial on the issue of damages did plaintiff claim actual damages for breach of other provisions of the contract violated by the sale by defendant of some of the vessels unscrapped.

Rule 54(c) on its face is an absolute ban against any judgment by default different in kind or greater in amount than that prayed for in the "Demand for Judgment". Since Rule 8 requires, inter alia, a "demand for judgment" to be included in the claim for relief, there appears to be no reasonable doubt that the "Demand for Judgment" referred to in Rule 54(c) is the demand for judgment in the complaint as it stood at the time the default was entered herein.

Plaintiff notes that the judgment herein was entered only after a trial on the issue of damages in which defendant participated through counsel. Plaintiff also suggests that because the facts showing the breach of contract for which actual damages were sought at the trial were alleged in the fourth count of the complaint, defendant in effect had notice prior to the default that actual damages for breach of contract might be sought. Plaintiff contends that these circumstances take defendant out of the class of defaulting defendants which Rule 54(c) was designed to protect.

The acts of defendant which are the basis for the claim for actual damages were also elements of the claims for relief made in counts one, two, and three. As the Court stated in its Order for Judgment, there are serious questions regarding the legal sufficiency of counts one, two, and three. When defendant chose the course of action which resulted in the entry of the default against him, he may well have felt that he could safely rely on his purely legal defenses to counts one, two, and three. Since the claim for liquidated damages for breach of contract made in count four was made entirely on the basis of the delay in scrapping, a matter which did not appear to be seriously disputed, defendant may well have concluded that there was no purpose in contesting the factual allegations of the complaint regarding such delay. But, had he been aware prior to the entry of default that plaintiff would thereafter assert a claim under count four for actual damages for breach of contract based on factual allegations which in the complaint had only been made the basis for a claim for damages under counts, one, two and three, defendant may well have pursued a different course than he did. It cannot be said with assurance that defendant was not prejudiced by plaintiff's failure to assert its demand for actual damages for breach of contract in the complaint.

While there might conceivably be circumstances in which a default judgment, exceeding in amount that demanded in the complaint, would be proper, such is not the case here. We conclude that Rule 54(c) precludes the recovery by default of anything in excess of liquidated damages.

■ Defendant is now seeking relief by way of vacation of his default, or amendment of the judgment in the alternative. As has been stated, the Court does not find any impropriety in the entry of the default at the time it was entered. However, a default entered as a sanction against acts of the defendant

which thwarted the discovery process of the Court, should not redound to his advantage. In the present posture of the case, plaintiff who sought the default may prefer to have a trial on the merits in which it could pursue its claim for actual damages for breach of contract. Consequently, the order of the Court will be that the judgment be amended to delete the award of actual damages unless plaintiff within 30 days consents to vacation of the default, in which case defendant's default shall be vacated.